UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHONTA KELLY,

          Plaintiff,

v.

PINNACLE FOODS GROUP LLC,

          Defendant.

Case No. 16-10022

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20]**

On January 5, 2016, Plaintiff filed a complaint alleging claims of racial

discrimination, racial harassment, and retaliation under the Michigan Elliott Larsen

Civil Rights Act (ELCRA), and a claim for breach of contract under §301 of the

Labor Management Relations Act (LMRA) against her former employer Defendant

Pinnacle Foods Group. Defendant Pinnacle Foods filed a Motion for Summary

Judgment on November 14, 2016 [20]. Plaintiff responded [21] on December 5,

2016 and Defendant replied [22] on December 19, 2016. A hearing was held

before the Court on June 28, 2017. For the reasons stated below, Defendant's

Motion for Summary Judgment [20] is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff, an African America woman, began working at Pinnacle's Imlay City, Michigan facility on May 15, 2012. [20-4 at ¶3]. While employed with Defendant Pinnacle, Plaintiff was a member of the Union. "At the time of her termination, Plaintiff was a Labeler Operator, operating a machine that places labels on jars." [*Id* at ¶4].

In April 2015, Plaintiff got into an argument with her fellow non-management employee, Lynn Hickey (Hickey). Plaintiff testified that Hickey told her to "Get the fuck out of my face. I feel like punching someone." Plaintiff reported Hickey to the HR department, and Hickey was suspended for five days without pay for violating company rule 8(B) through use of intimidating or abusive language, including threatening bodily harm. [20-4 at 18]. This was not a terminable offense until the third infraction. [20-3 at 22].

Plaintiff testified that, after reporting Hickey to HR, she had fellow non-management employees, including Hickey and John Wilcoxin, working deliberately to make her job more difficult by placing all the jars on her line. [20-5 at 127]. Plaintiff also testified that her supervisor, Camerin Levi, was aware of the tension between Plaintiff and Hickey, but did not separate the two employees. [20-5 at 130].

On June 4, 2015, Plaintiff testified that the jars on her line kept tipping over, causing her machine to malfunction, and stopping production. [20-5 at 72; 76]. Plaintiff then shut the machine down and walked away to contact HR to see if there was someone who could help her fix the machine. [*Id* at 77]. Per the employee handbook company rule 4(c), "employees will not leave their work area except at designated break time, lunch periods, and quitting times without permission from supervisor." [20-3 at 20]. Plaintiff admits that she was informed of this rule as part of her training. [20-5 at 87]. In Plaintiff's deposition, she admits that when she left her work station, she saw the Crew Leader Lorie Evans, but did not stop to ask her to call the supervisor with her walkie-talkie as she had done in the past, but rather abandoned her station and walked away because she was frustrated and was heading to HR to obtain help. [20-5 at 83-87]. Per Plaintiff's statements, she was in violation of Rule 4(C). [20-4 at ¶9].

Evans submitted a written statement to HR concerning Plaintiff leaving her station. [20-4 at 8]. Plaintiff's Supervisor, Camerin Levi (Levi), was informed about the labeler malfunction and of Plaintiff leaving her station. When Plaintiff reached HR, the door was locked, so she headed back to her station. [20-5 at 89-90]. While on her way back to her station, Plaintiff met Levi, who took her back to HR. [*Id*]. Plaintiff testified that Levi was angry at her for leaving her station, and informed her that she could be automatically terminated for that offense. [*Id* at 91].

At HR, Plaintiff and Levi spoke with HR representative Marilyn Hiller (Hiller). Hiller said that appropriate action would be taken for Plaintiff's violation of company policy. [20-5 at 92-93]. Plaintiff was upset and crying but returned to her machine. [20-5 at 93].

Levi and his supervisor Jim Robeson determined that Plaintiff should be suspended pending investigation of her rule violation, which had resulted in 60 minutes of downtime for the machine. [20-4 at ¶11]. Plaintiff was not terminated for this violation. After being informed of her suspension, Plaintiff was walked out by a guard. [20-5 at 99]. Plaintiff went to her car in the facility's parking lot, briefly left to get food, and returned to have a friend drive her home because she was upset. [*Id*]. Upon her return, three employees, Brenda Stiff (Stiff), John Wilcoxin (Wilcoxin) and Joan Brooks (Brooks) were in the parking lot. Brooks and Wilcoxin, who were leaving their shift, stopped to talk to Stiff and another employee who were coming in to start their shift [20-4 at 12-14].

Stiff, Brooks and Wilcoxin submitted witness statements to HR about the following events in the parking lot. [20-4 at ¶13]. They all reported that, while they were in the parking lot, Plaintiff flipped them the middle finger several times. [20-4 at 12-14]. Plaintiff admits in her deposition that she did stick her middle finger up and gesture towards Wilcoxin. [20-5 at 103]. After the group of four finished their conversation, Brooks and Wilcoxin continued to their cars while the other

employees headed to their shift. [*Id*]. Brooks and Wilcoxin reported that as they were leaving the parking lot, in their own cars with the windows rolled down, they observed Plaintiff made a gesture imitating fellatio and yelled "Faggot!" at Wilcoxin several times. [*Id*]. Plaintiff testified that she knew that Wilcoxin was gay. [20-5 at 105]. While Plaintiff admits that she gestured with her middle finger, she denies having used any derogatory language or making any sexually obscene gesture at Wilcoxin [*Id*].

HR Manager Michael Ryan (Ryan) and Plant Manager Jeannene Schaffnit reviewed the witness statements and determined that Plaintiff's actions violated company rule 11(c), employee assault, a terminable offense for first time offenders. Plaintiff was not interviewed as part of this investigation. She was ultimately terminated for her violation of Rule 11(c).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**ANALYSIS**

### 1. RACIAL DISCRIMINATION CLAIM

Under the Michigan Elliott Larsen Civil Rights Act (ELCRA), if there is no direct evidence tending to establish racial bias, the approach in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is employed in which a Plaintiff has an opportunity to present a prima facie case of discrimination by presenting evidence that: she "(i) was a member of a protected class, (ii) was qualified for the position, (iii) suffered an adverse employment action, and (iv) was 'treated differently than similarly situated non-protected employees.'" *Mensah v. Mich. Dep't of Corr.*, 621 Fed. Appx. 332, 334 (6th Cir. 2015) (quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)). If Plaintiff can establish a *prima facie* case, a presumption of discrimination arises. *Id.*

Plaintiff fails to raise a *prima facie* case of employment discrimination, because the facts do not give rise to an inference of discrimination. Ryan and Schaffnit terminated Plaintiff y after the statements from three employees supported that she had put up the middle finger, then yelled faggot and made a sexually inappropriate gesture at an employee known to be gay. Plaintiff also states in her testimony that the only manager who she believes to have been biased against her based on race was Levi, and he had no part in her termination. There are no accusations against either Ryan or Schaffnit, who conducted the investigation into the incident and made the decision to fire Plaintiff. Therefore, there no *prima facie* claim of harassment has been made.

If she is presumed to have established a *prima facie* case, the presumption of discrimination can be rebutted by Defendants if they can produce evidence that the "employment actions were taken for a legitimate, nondiscriminatory reason." *Id* at 464. It is clear that terminating an employee for making the discriminatory statements that Plaintiff made is permissible. The burden then shifts back to Plaintiff, who must show that the employer's proffered reason was a pretext for unlawful discrimination. Plaintiff can show pretext in three ways, by showing: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th

Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir.2004)). To successfully argue pretext, a Plaintiff must "produce sufficient evidence from which a jury could reasonably reject Dow's explanation of why it fired her." *Id* at 400 (citations omitted).

Plaintiff argues Hickey was not terminated for what she equates to be the same or similar offense, and also calls into question the sufficiency of the investigation undertaken before her termination. Even if pretext can be established, it can be successfully rebutted if the "employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Id* at 401.

In this case, there is no evidence presented that the persons who made the decision to investigate and terminate Plaintiff had any racial bias toward Plaintiff, or that they did not honestly believe the statements given to them. In fact, Plaintiff admits that she did not have any previous problems with Stiff and Brooks, which supports the conclusion that the employer reasonably relied on the facts as presented by them. [20-5 at 102, 106]. Therefore, summary judgment is granted on this claim.

## 2. RACIAL HARASSMENT

Under Michigan law, to establish a *prima facie* case of discrimination based on a hostile work environment, five elements must be shown:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of [her protected status]; (3) the employee was subjected to unwelcome ... conduct or communication [involving her protected status]; (4) the unwelcome ... conduct was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Quinto v. Cross & Peters Co.*, 451 Mich. 358, 368–69, 547 N.W.2d 314, 319–20 (1996). Whether unwelcome conduct rises to level of a hostile work environment "shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id* at 369 (quoting *Radtke v. Everett*, 442 Mich. 368, 392, 501 N.W.2d 155, 166 (1993)).

Plaintiff alleges that the actions of her co-worker Hickey constituted harassment. Plaintiff does not allege that she ever heard her alleged harasser making any racial comments and, at her deposition, admitted that any belief that Hickey's actions were racially motivated were mere speculation. [20-5 at 125]. This is fatal to her claim as points two and three have therefore not been established. She never heard anyone say anything inappropriate about race; and

rather "just knew they were," without any specific allegations. [*Id*]. Even in the response brief, Plaintiff has failed to make any allegation that the alleged acts themselves constituted an alleged hostile environment involved her race. Plaintiff also fails to meet the requirements of point 5, because there are no allegations that she made any complaints about Hickey or any other employee that concerned race. Therefore there are no allegations that Defendant was aware that Plaintiff allegedly was being racially harassed. Therefore this claim must fail, and summary judgment is granted to Defendant on this claim.

### 3. RETALIATION

The ELCRA provides in pertinent part that "a person shall not ... [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." *Id* (citing MCL 37.2701(a)). Much like a federal claim of retaliation, to establish a *prima facie* case of retaliation under the ELCRA, a Plaintiff must show: "(1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an ... action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse ... action." *Id* at *3 (citing Meyers v. City of Center Line, 242 Mich. App. 560, 568–569; 619 N.W.2d 182 (2000)). Michigan Courts have ruled that, to qualify as protected

activity under MCL 37.2701(a), "a plaintiff must clearly convey to an objective defendant that she is 'raising the specter of a claim of unlawful discrimination pursuant to the CRA.'" *Id* (citing *Barret v. Kirtland Community College*, 245 Mich. App. 306, 319; 628 N.W.2d 63 (2001)).

Plaintiff asserts that she complained to her supervisor Levi regarding the actions of Hickey and Wilcoxin sabotaging her line, and this was a significant factor in her termination. Plaintiff's claim fails for several reasons. There is no evidence that Plaintiff took part in any protected activity as defined under the ELCRA. She has failed to allege that there were any reported complaints that concerned alleged harassment based on race. Causation is also a problem for this claim. There is nothing that links the decision of Ryan and Schaffnit to any complaints made to Levi. Plaintiff complains that Wilconixin, Levi and Hickey were trying to get rid of her, but there is nothing to illustrate that these efforts were factors in the investigation of Ryan and Schaffnit, or the ultimate dismissal, in light of the witness statements. Therefore, summary judgment is granted on this claim as well.

## 4. BREACH OF CONTRACT CLAIM

Finally, Plaintiff brings a breach of contract claim against Defendant Pinnacle under § 301 of the Labor Management Relations Act ("§301"). Claims under this section have also been brought against Co-Defendant United Dairy &

Bakery Workers Local 87 AFLCIO ("Local 87"), and they previously brought a motion to dismiss this claim, *inter alia*, for a violation of the statute of limitations. The Court granted Local 87's motion to dismiss on statute of limitation grounds, and this defense should be accepted for the same reason here. Therefore, for the reasons stated in the Order entered on February 17, 2017 [23], summary judgment is granted on this claim.

5. **CONCLUSION**

In conclusion, Plaintiff has not presented any evidence that racial bias or prohibited discrimination played a part in any of the alleged claims. Further, summary judgment should be granted on the §301 federal claim for the same reason that it was dismissed against the union Defendant previously, as it was filed after running of the statute of limitations. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [20] is **GRANTED**.

**SO ORDERED**.


                                       s/Arthur J. Tarnow
                                       Arthur J. Tarnow

Dated: July 10, 2017                 Senior United States District Judge